UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

SCHWING AMERICA, INC.

Debtor.

Bky Case No. 09-36760
Chapter 11

**NOTICE OF HEARING AND MOTION FOR ORDER (I) GRANTING EXPEDITED RELIEF; (II) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING ON AN INTERIM AND FINAL BASIS; (III) AUTHORIZING DEBTOR'S TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS; AND (IV) GRANTING ADEQUATE PROTECTION**

TO: The entities specified in Local Rule 9013-3

1. Schwing America, Inc. ("Debtor"), through its undersigned attorneys, move the court (the "Motion") for the relief requested below and give notice of hearing.

## PRELIMINARY HEARING

2. The court will hold a preliminary hearing on this Motion at **11:00 a.m. on October 1, 2009**, before the Honorable Nancy C. Dreher, Courtroom 7W, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415 (the "Preliminary Hearing").

3. Any response to this Motion as to issues to be considered at the Preliminary Hearing must be filed and delivered not later than September 30, 2009. **Unless a response opposing the Motion is timely filed, the Court may grant the preliminary relief requested in the Motion without a hearing.**

## FINAL HEARING

4. The court will hold a final hearing on this Motion at **2:00 p.m. on October 15, 2009**, before the Honorable Nancy C. Dreher, Courtroom 7W, U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415 (the "Final Hearing").

5. Any response related to issues to be considered at the Final Hearing must be filed and delivered not later than **October 9, 2009**, which is three (3) days before the time set for the Final Hearing (excluding Saturdays, Sundays, and holidays), or filed and served by mail not later than **October 5, 2009**, which is seven (7) days before the time set for the Final Hearing (excluding Saturdays, Sundays and holidays). **Unless a response opposing the Motion is timely filed, the Court may grant the relief requested in the Motion without a hearing.**

6. This Court has jurisdiction over this Motion under 28 U.S.C. §§157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. This proceeding is a core proceeding. The petition commencing this case was filed on September 28, 2009 (the "Petition Date"). The case is now pending before this Court.

7. This motion arises under §§ 363 and 364 of Title 11 of the United States Code (the "Bankruptcy Code"), and Fed.R. Bankr.P. 4001 and 9014.

## SUMMARY OF RELIEF SOUGHT

8. Through December 4, 2009, Debtor seeks authority to use cash collateral of up to $7.8 million and to borrow up to $750,000, including the Chassis Payments as described below, from Schwing GmbH, Debtor's German parent company, secured by a security interest in Debtor's assets subordinate to the security interest and mortgage of Wells Fargo Bank, National Association and Bank of America, N.A. (together, the "Lender").

9. The Lender holds a security interest in virtually all of Debtors personal property to secure an obligation of approximately $21.7 million. In addition the Lender holds a mortgage in Debtor's real property to secure a series of term notes with an approximate balance of $6.2 million.

10. Debtor proposes to fund its operations during the early stages this case through use of cash collateral backed up by loans from its parent company totaling approximately $10.3 million through December 31, 2009. Debtor seeks interim use of cash collateral and authority to borrow up to $2,060,000 through the date of the Final Hearing.

11. Debtor proposes to erode Lender's equity cushion by about $7.5 million through December 31, 2009, reducing that cushion from approximately $59 million at the commencement of the case to approximately $51 million at year end. However, as adequate protection of Lender's interests, Debtor also offers to pay interest on the loan and a second mortgage on its real property in an amount equal to cash collateral used and a replacement lien on all property which Debtor acquires post-petition. The real property has an appraised value of $12 million and is subject to a $6 million first mortgage. Debtor will also pay the real estate tax installment due on that property in October 2009 in the sum of $230,284. A combination of the size of Lender's equity cushion in the personal property collateral, the new mortgage, and the replacement lien will adequately protect Lender's interests. Not only will Lender's interests be protected, as shown on **Exhibit A**, Debtor's use of cash collateral will not cause Debtor to stray outside the borrowing base set under the loan documents pertaining to the obligation. Lender's security interest will also be protected by the working capital loans Debtor's parent is prepared to make if necessary during the course of this case which will be secured by a subordinate security interest.

## FACTUAL BACKGROUND

12. Debtor is a Minnesota corporation primarily engaged in the business of the manufacture and sale of concrete pumping and management equipment in North America.

13. Debtor's sales in calendar year 2007 totaled $276 million and in 2008 dropped to $183 million. Its sales for 2009 are expected to be approximately $64 million.

14. The reason for the drop in Debtor's sales is the worldwide recession in construction spending. Notwithstanding the significant erosion in sales, Debtor's management and its parent corporation believe that the business will rebound and be profitable in the future.

15. Debtor is the U.S. subsidiary of Schwing GmbH. Schwing GmbH is the parent of many other corporations engaged in business similar to that of Debtor in various parts of the world. While these corporations' market shares vary, in all Schwing Group is the leading supplier of concrete pumping equipment in the world and has a reputation for quality products and service.

16. Schwing Group is committed to its U.S. subsidiary. It intends to provide the financial support necessary to bring Debtor through the downturn it is now experiencing. It has been providing that financial support to date by means of capital infusions to support operations. However, that means of funding cash shortfalls in Debtor's operations is no longer tenable.

17. Schwing GmbH is financed by a consortium of European banks (the "European Banks"). In July, the European Banks have caused Schwing GmbH to engage turnaround consultants at KPMG to evaluate the business of the Schwing Group and make an initial recommendation on restructuring the business and the debt owed to the European Banks by September 30, 2009. The European Banks have agreed to stand still until October 31, 2009— that is, they will not require reduction in the principal amount of their loans until at least that

time. Thereafter, assuming the completion of a favorable KPMG recommendation, the Debtor expects that Schwing GmbH and the European Banks will agree upon a restructure of the debt owed to the European Banks which will provide a methodology to deal with the obligations owed to the Lender.

18. In the meantime, the European Banks have agreed to provide a bridge loan to Schwing GmbH until December 31, 2009, to meet a portion of its working capital needed by Schwing GmbH. Approximately $4.6 million of this commitment is earmarked for the Debtor's needs. No more than that amount is available to Debtor from Schwing GmbH under the current agreement with the European Banks. The European Banks are requiring that these committed funds be loaned only to the extent the Debtor's cash collateral is not sufficient to fund Debtor's operations. Thus, the loan is available only if needed in that sense.

19. As an alternative, Schwing GmbH's Indian subsidiary, Schwing Stetter India Private, Ltd. ("Schwing India") is negotiating a transaction with its lender, ICICI Bank Ltd. ("ICICI") in which Schwing India would become a majority shareholder of Debtor and ICICI would provide additional financing sufficient to pay off Debtor's obligations to Lender. While a commitment to this transaction has not yet been obtained, it is expected that the transaction would close by year end.

## THE LENDER'S LOANS

20. Debtor's obligations to the Lenders consist of a revolving working capital facility secured by the Debtor's personal property, including accounts and inventory which constitute cash collateral, and a series of term notes secured by a mortgage in Debtor's real property.

21. Lender's security interest was perfected by the filing of several financing statements, the most recent on May 14, 2009, with the Minnesota Secretary of State. The balance of the revolving credit facility is approximately $21.7 million.

22. The mortgage on Debtor's real property was in the original amount of $14.5 million and was recorded in Ramsey County on March 9, 2001. The unpaid balance of the mortgage obligation is approximately $6.2 million.

## RELIEF REQUESTED

23. Debtor requests authorization for a combination of use of Lender's cash collateral and for borrowing from Schwing GmbH on a facility to be secured by a junior security interest in Debtor's property.

24. Debtor requests an order authorizing interim and final use of cash collateral and the borrowings from Schwing GmbH so that Debtor may meet the ordinary expenses of operating its business, as estimated in the budget attached hereto as **Exhibit A** ("Budget").

25. As adequate protection of the Lender's interest in the cash collateral, Debtor offers a replacement lien on all property of the Debtor acquired after the petition date, payment of interest and real estate taxes, and a second mortgage on Debtor's real property in an amount equal to the cash collateral used. Together with the equity cushion which is the amount by which the value of the Lender's existing collateral exceeds the amount of the secured debt, this offer more than adequately protects the Lender's interest in cash collateral.

26. Debtor has the ability to fund some, but not all, of its working capital needs through loans from its parent. Debtor has not been able to locate financing for these needs elsewhere. The terms of financing from Schwing GmbH are reasonable under the circumstances. The loan will carry an interest rate to be determine by the Preliminary Hearing and the loan

balance, including interest, will be payable upon confirmation of Debtor's plan. The only event of default will be if the Lender obtains modification of the automatic stay to enforce its remedies against its collateral.

27. Debtor's initial request is for use of cash collateral and borrowing through December 4, 2009. At that time, Debtor should know more about the plans of the European Banks and ICICI and will be able to provide more clarity on how the Lender's claims will be paid. Through December 4, 2009, Debtor requests use of cash collateral of approximately $7.8 million and authority to borrow approximately $750,000 from its parent. Use of cash collateral and borrowing will take place on the time schedule set out on **Exhibit A**. To the extent that cash collateral in excess of the projected amount is collected by Debtor, it will be placed in a segregated account at Wells Fargo and remain subject to the Lender's lien.

28. Pending the final hearing, Debtor has a need to borrow funds and use cash collateral through date of the Preliminary Hearing to pay operating expenses in the amounts identified in the Budget attached as **Exhibit B**. If Debtor is not permitted to borrow on an interim basis for the purposes set forth in the Budget pending a final hearing, Debtor will suffer immediate and irreparable harm.

### ESTIMATED COLLATERAL VALUE

29. Debtor's estimates of the value of Lender's collateral on the petition date and at the end of the period of requested use of cash collateral are set forth on **Exhibit A**.

### WITNESSES

30. Debtor reserves the right, if necessary, to offer the testimony of Brian Mogensen, the Chief Financial Officer of Debtor, in support of the Motion.

**WHEREFORE,** Debtor respectfully requests this Court to enter an interim order followed by a final order (a) granting expedited relief; (b) granting Debtor the authority to borrow up to $750,000 from Schwing GmbH secured by a junior security interest in Debtor's assets, (c) authorizing use of cash collateral from the Petition Date through the date of the Preliminary Hearing; (d) authorizing Debtor to grant the adequate protection as set forth in the Motion; (e) granting the other relief requested in this Motion, and (h) granting Debtor such other legal and equitable relief to which it is entitled.

Dated: September 28, 2009

RAVICH MEYER KIRKMAN
McGRATH NAUMAN & TANSEY,
A PROFESSIONAL ASSOCIATION

By  /e/ Michael L. Meyer (72527)
       Will R. Tansey (323056)

4545 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-8511

ATTORNEYS FOR DEBTOR

## VERIFICATION

I, Brian Mogensen, the Chief Financial Officer of Debtor, declare under penalty of perjury that the facts set forth in the foregoing Notice of Hearing and Motion for Expedited Hearing and For Interim and Final Orders Authorizing Postpetition Secured Financing, Use of Cash Collateral, and the Granting of Adequate Protection are true and correct according to the best of my knowledge, information and belief.

Executed on: September 28, 2009

_____
Brian Mogensen

# EXHIBIT A

**SAI Cash Plan**
As of Sept 25th, 2009

| | | 10/02/09 | 10/09/09 | 10/16/09 | 10/23/09 | 10/30/09 | 11/06/09 | 11/13/09 | 11/20/09 | 11/27/09 | 12/04/09 | 12/11/09 | 12/18/09 | 12/25/09 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash Position | | $ - | $ 403 | $ 925 | $ 1,755 | $ 1,880 | $ 4,015 | $ 4,132 | $ 4,568 | $ 5,672 | $ 5,333 | $ 4,772 | $ 5,374 | $ 5,754 | | | |
| Tax Refund | | | | | | $ 2,624 | | | | | | | | | $ 2,624 | | |
| Collavino Payment / Sale | 0.90 | | | $ 1,000 | | | | | | | | | | | $ 1,000 | | |
| NA New BPL | 1.0 | $ 495 | $ 700 | $ 405 | $ 390 | | $ 468 | $ 502 | $ 1,410 | | | $ 668 | $ 686 | $ 650 | $ 6,374 | Added CPR payments and Omstead | |
| SP World-wide | 0.85 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 120 | $ 1,560 | | |
| Parts | 0.6 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 285 | $ 3,705 | | |
| GmbH Loan - $4.6M Commitment | | $ 200 | $ 110 | $ - | $ 110 | | $ 110 | $ 110 | $ 110 | | | $ 110 | $ 110 | $ 110 | $ 1,080 | | |
| Chassis Purchases | | $ (200) | $ (110) | | $ (110) | | $ (110) | $ (110) | $ (110) | | | $ (110) | $ (110) | $ (110) | $ (1,080) | | |
| Net GmbH Loan | | $ - | $ - | $ - | $ - | | $ - | $ - | $ - | | $ - | $ - | $ - | $ - | $ - | | |
| | | $ 900 | $ 1,105 | $ 1,810 | $ 795 | $ 3,029 | $ 873 | $ 907 | $ 1,815 | $ 405 | $ 405 | $ 1,073 | $ 1,091 | $ 1,055 | $ 15,263 | | |
| **Cash Needs** | | | | | | | | | | | | | | | | | |
| Payroll | | $ (121) | $ (361) | $ (121) | $ (361) | $ (121) | $ (361) | $ (121) | $ (361) | $ (121) | $ (361) | $ (121) | $ (361) | $ (121) | $ (3,013) | | |
| Utilities | | $ - | $ - | $ (119) | $ - | $ - | $ (25) | $ (25) | $ (25) | $ (25) | $ (25) | $ (25) | $ (25) | $ (25) | $ (319) | $119 - 45 day utility deposits | |
| Leases | | | | | | $ (232) | | | | $ (116) | | | | $ (116) | $ (464) | | |
| Vendor Payments | | $ (138) | $ (138) | $ (541) | $ (178) | $ (163) | $ (250) | $ (250) | $ (250) | $ (250) | $ (250) | $ (250) | $ (250) | $ (250) | $ (3,158) | | |
| Insurance | | $ (98) | $ (85) | $ (199) | $ (132) | $ (167) | $ (75) | $ (75) | $ (75) | $ (232) | $ (75) | $ (75) | $ (75) | $ (232) | $ (1,595) | | |
| Financing Costs (Int., Fees, etc.) | | $ (140) | $ - | $ - | $ - | $ (210) | $ - | $ - | $ - | $ - | $ (210) | $ - | $ - | $ - | $ (560) | | |
| Legal Fees - Debtor | | | | | | | $ (20) | | | | $ (20) | | | | $ (40) | | |
| Legal Fees - Banks | | | | | | | $ (15) | | | | $ (15) | | | | $ (30) | | |
| Legal Fees - Creditor Committee | | | | | | | $ (10) | | | | $ (10) | | | | $ (20) | | |
| US Trustee Fees | | | | | | | | | | | | | | $ (10) | $ (10) | | |
| Total Accts Payable | | $ (376) | $ (223) | $ (858) | $ (310) | $ (773) | $ (395) | $ (350) | $ (350) | $ (623) | $ (605) | $ (350) | $ (350) | $ (633) | $ (6,196) | | |
| Total Expenditures | | $ (496.6) | $ (583.8) | $ (979.3) | $ (670.8) | $ (894.0) | $ (756.0) | $ (471.0) | $ (711.0) | $ (744.0) | $ (966.0) | $ (471.0) | $ (711.0) | $ (754.0) | $ (9,209) | | |
| Cash Balance | | $ 403 | $ 925 | $ 1,755 | $ 1,880 | $ 4,015 | $ 4,132 | $ 4,568 | $ 5,672 | $ 5,333 | $ 4,772 | $ 5,374 | $ 5,754 | $ 6,055 | | | |
| Revolver Balance | | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | $ 21,692 | | | |
| Fixed Asset Loan | | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | $ 6,171 | | | |
| Total Outstanding Loan Balance | | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | $ 27,863 | | | |
| Borrowing Base | | $ 33,018 | $ 32,597 | $ 32,043 | $ 31,096 | $ 30,744 | $ 30,645 | $ 30,583 | $ 30,158 | $ 29,143 | $ 29,044 | $ 28,945 | $ 28,411 | $ 27,866 | $ (5,152) | | |
| **Additional Collateral**  Cash Account | | $ 403 | $ 925 | $ 1,755 | $ 1,880 | $ 4,015 | $ 4,132 | $ 4,568 | $ 5,672 | $ 5,333 | $ 4,772 | $ 5,374 | $ 5,754 | $ 6,055 | | | |
| Chassis | | $ 1,482 | $ 1,358 | $ 1,358 | $ 1,314 | $ 1,314 | $ 1,270 | $ 1,226 | $ 1,182 | $ 1,182 | $ 1,182 | $ 1,138 | $ 1,094 | $ 1,050 | $ (432) | | |
| Effect of Sales on Borrowing Base | | $ (421) | $ (554) | $ (947) | $ (353) | $ (99) | $ (61) | $ (425) | $ (1,016) | $ (99) | $ (99) | $ (533) | $ (545) | $ (522) | $ (5,673) | | |
| **Over Collateralization** | | $ 13,633 | $ 13,742 | $ 14,412 | $ 12,950 | $ 14,479 | $ 14,416 | $ 15,111 | $ 16,335 | $ 14,064 | $ 13,404 | $ 14,298 | $ 14,112 | $ 13,801 | $ 168 | | |

| **Collateral Value** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Accts Receiveable | $ 915.1 | | | $ 1,675.1 | | $ 915.1 | | $ 915.1 | Eligible A/R Only |
| Parts Inventory | $ 31,486.2 | | | $ 30,248.7 | | $ 29,258.7 | | $ 28,268.7 | No In-Transit, Slow moving or Obsolete |
| Work in Process | $ 1,697.5 | | | $ 1,697.5 | | $ 1,697.5 | | $ 1,697.5 | Net of all exclusions listed in Bank Borrowing Base Calcs |
| Finished Goods | $ 40,151.6 | | | $ 36,700.6 | | $ 35,318.6 | | $ 33,515.0 | NBV |
| Chassis | $ 3,706.0 | | | $ 3,286.0 | | $ 2,956.0 | | $ 2,626.0 | $ 1,080 |
| Intangibles | $ 2,624.0 | | | $ - | | $ - | | $ - | |
| Real Estate | $ 6,200.0 | | | $ 6,200.0 | | $ 6,200.0 | | $ 6,200.0 | |
| Unspent cash Collateral Proceeds | | | | $ 4,131.5 | | $ 4,771.5 | | $ 6,054.5 | |
| | $ 86,780.4 | | | $ 83,939.4 | | $ 81,117.4 | | $ 79,276.8 | $ 7,504 |

**Schwing America, Inc.**
**Required Payments**
Period Covered 09/28/09 thru 10/23/09

# EXHIBIT B

| Payee | Description | CW 40 Week Ending: 10/2/2009 | CW 41 10/9/2009 | CW 42 10/16/2009 | CW 43 10/23/2009 | Total | Comments | CW 44 10/30/2009 |
|---|---|---|---|---|---|---|---|---|
| **1 Payroll** | | $121,000.00 | $361,000.00 | $121,000.00 | $361,000.00 | **$964,000.00** | | $121,000.00 |
| **2 Fixed Costs** | | | | | | | | |
| **Utilities *** | | | | | | | | |
| Electricity | | | | $45,785.06 | | $45,785.06 | | |
| Gas | | | | $70,663.31 | | $70,663.31 | | |
| Water | | | | $2,551.62 | | $2,551.62 | | |
| | | | | | | $0.00 | | |
| **Utilities Sub-Total** | | **$0.00** | **$0.00** | **$119,000.00** | **$0.00** | **$119,000.00** | | **$0.00** |
| **Operations** | | | | | | | | |
| **Freight Bills** | | | | | | | | |
| Franklin Traffic | | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $120,000.00 | | $30,000.00 |
| Superior | | | | $5,000.00 | | $5,000.00 | | |
| Schenker | | | | $1,000.00 | | $1,000.00 | | |
| **Telephones** | | | | $19,978.13 | | $19,978.13 | | |
| **Cell Phones** | | | | $10,155.49 | | $10,155.49 | | |
| **Internet Access & Internet Hosting** | | | | $8,777.38 | | $8,777.38 | | |
| **Employee Expense Reports** | | $7,500.00 | $7,500.00 | $7,500.00 | $7,500.00 | $30,000.00 | | $7,500.00 |
| **Sales Tax** | | | | | $40,000.00 | $40,000.00 | | |
| **Property Tax** | | | | $329,000.00 | | $329,000.00 | | |
| **Security** | | | | $3,370.69 | | $3,370.69 | | |
| **Garbage** | | | | $3,616.39 | | $3,616.39 | | |
| **Janitorial** | | | | $3,862.45 | | $3,862.45 | | |
| **Uniforms** | | | | $10,000.00 | | $10,000.00 | | |
| **Office Supplies** | | $250.00 | $250.00 | $250.00 | $250.00 | $1,000.00 | | $250.00 |
| **Pest Control** | | | | $300.00 | | $300.00 | | |
| **Lawn Care** | | | | $3,000.00 | | $3,000.00 | | |
| **Temporary Labor** | | | | $5,000.00 | | $5,000.00 | | |
| **Bank Fees** | | | | | | $0.00 | | $25,500.00 |
| **Operations Sub-Total** | | **$37,750.00** | **$37,750.00** | **$440,810.53** | **$77,750.00** | **$594,060.53** | | **$63,250.00** |
| **Building Rent/Lease Payments** | | | | | | | | |
| Bollibokka | Livermore, CA Location | | | | | $0.00 | Rent/Lease Pmt x 2 | $39,352.36 |
| 1300 Gresham | Atlanta Location | | | | | $0.00 | Rent/Lease Pmt x 2 | $37,388.20 |
| Mushegan | Mira Loma, CA Location | | | | | $0.00 | Rent/Lease Pmt x 2 | $32,252.94 |
| m-13 Limited partnership | Tampa, FL Location | | | | | $0.00 | Rent/Lease Pmt x 2 | $11,770.00 |
| Izatys | Izatys Townhome Assn. Dues | | | | | $0.00 | Rent/Lease Pmt x 2 | $740.00 |
| **Building Rent/Lease Payments Sub-Total** | | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | | **$121,503.50** |
| **Equipment Rent/Lease Payments** | | | | | | | | |
| Union Leasing | Vehicle Leases for Salespeople and Executives | | | | | $0.00 | Rent/Lease Pmt x 2 | $39,800.00 |
| Concrete Pump Repair | Storage of Used Pumps | | | | | $0.00 | Rent/Lease Pmt x 2 | $10,000.00 |
| National City | Lease Payment for Machine Roll Equipment | | | | | $0.00 | Rent/Lease Pmt x 2 | $5,188.06 |
| Toyota Motor Credit | Lease Payment for Forklifts | | | | | $0.00 | Rent/Lease Pmt x 2 | $17,832.36 |
| Wells Fargo | Lease Payment for Freeman Display Booth | | | | | $0.00 | Rent/Lease Pmt x 2 | $17,785.86 |
| Wells Fargo | Lease Payment for Abrasive Blaster | | | | | $0.00 | Rent/Lease Pmt x 2 | $12,366.20 |
| Wells Fargo | Lease Payment for Midway Paint Booth | | | | | $0.00 | Rent/Lease Pmt x 2 | $7,835.74 |
| **Equipment Rent/Lease Payments Sub-Total** | | **$0.00** | **$0.00** | **$0.00** | **$0.00** | **$0.00** | | **$110,808.22** |
| **Insurance** | | | | | | | | |
| Flat Iron | Financed P&C Insurance Monthly Payment | $92,421.91 | | | | $92,421.91 | Monthly Insurance Premium - Domestic P&C | $92,421.91 |
| HDI N1 Dortmund | Foreign Liability Insurance | | | $123,480.05 | | $123,480.05 | Semi-Annual Insurance Premium - Int'l Coverage | |
| Sentry Insurance | Worker's Comp Insurance | | | | $57,000.00 | $57,000.00 | Worker's Compensation Coverage | |
| Mutual of Omaha | Life Insurance | | $10,000.00 | | | $10,000.00 | Employee Life Insurance Premiums | |
| Preferred One | Medical Claims & Prescription Costs - Monday ACH | $5,394.31 | $75,000.00 | $75,000.00 | $75,000.00 | $230,394.31 | Weekly Employee Health Care | $75,000.00 |
| **Insurance Sub-total** | | **$97,816.22** | **$85,000.00** | **$198,480.05** | **$132,000.00** | **$513,296.27** | | **$167,421.91** |
| **Fixed Costs Sub-Total** | | **$135,566.22** | **$122,750.00** | **$758,290.58** | **$209,750.00** | **$1,226,356.80** | | **$462,983.63** |
| **3 Purchases of Materials for Customer's Orders** | | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | **$400,000.00** | Payments for operations post-filing | $100,000.00 |
| **4 Financing Costs** | | $140,000.00 | | | | **$140,000.00** | | $210,000.00 |
| **Total** | | **$496,566.22** | **$583,750.00** | **$979,290.58** | **$670,750.00** | **$2,730,356.80** | | **$893,983.63** |
| Notes: | | | | | | $0.00 | | |
| * Utility payments assume that a deposit of 45 days will need to be paid in week 3 | | | | | | | | |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

SCHWING AMERICA, INC.

Debtor.

Bky Case No. 09-36760
Chapter 11

**MEMORANDUM OF LAW**

The Debtor, through its undersigned counsel, submits this Memorandum of Law in support of its Motion for Preliminary and Final Orders Authorizing Postpetition Secured Superpriority Financing Under 11 U.S.C. § 364 ("Motion"). Hearings on the Motion have been scheduled for **October 1, 2009 and October 15, 2009**.

**FACTS**

The factual basis for this Memorandum is set forth in the verified Motion and is incorporated as though fully set forth herein. All capitalized terms not defined herein have the meaning ascribed in the Motion.

**LEGAL ARGUMENT**

1.   <u>The Proposed Financing Is Necessary To A Successful Reorganization</u>.

11 U.S.C. §364(c) provides:

If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--

(1)   with priority over any or all administrative expenses of the kind specified in 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. §364(d)(1) provides:

The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if --

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

Having determined that postpetition financing was available only under Bankruptcy Code sections 364(c), Debtor negotiated the DIP Credit Facility at arm's length and in accordance with its sound business judgment. In negotiating debtor-in-possession financing arrangements, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties." In re Ames Department Store, Inc., 115 B.R. 34, 38 (S.D.N.Y. 1990). Courts will evaluate the facts and circumstances of a debtor's case, and will accord significant weight to the necessity for obtaining financing so long as it does not run afoul of the provisions of and policies underlying the Bankruptcy Code. See, e.g., In re Snow Shoe, 789 F.2d 1085 (4th Cir. 1986) (approving postpetition financing necessary to sustain seasonable business); Ames, 115 B.R. at 40 ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest.") Courts generally will not override the debtor's prudent and responsible exercise of its business judgment consistent with its fiduciary duties to the bankruptcy estate and its creditors in negotiating an

appropriate financing package. See In re Simasko Prod Co., 47 B.R. 444 (Bankr. D. Colo. 1985) (noting that business judgment should be left to the boardroom and not to the bankruptcy courts).

The financing contemplated by the DIP Credit Facility benefits Debtor's bankruptcy estate and its creditors. It is critical to the preservation and enhancement the Debtor's business and going concern value. With the credit provided under the DIP Credit Facility, Debtor will be able to obtain services in connection with its operations, including paying its employees, maintaining adequate cash balances, and operating its business in order to preserve the ongoing value of its assets and enterprise for the benefit of all creditors. Without the financing furnished by the DIP Credit Facility, Debtor will suffer irreparable harm, and its entire reorganization effort will be jeopardized.

2. Use of Cash Collateral.

11 U.S.C. §363(c)(2) provides that a debtor may use cash collateral only with the consent of each entity that has an interest in such cash collateral, or if the court, after notice and a hearing, authorizes such use. Use of cash collateral must be restricted or conditioned as is necessary to provide adequate protection to any entity that has an interest in the property which the Debtor proposes to use. 11 U.S.C. §363(e). In this case, Debtor requests approval of its use of cash collateral through May 30, 2008, to the extent necessary to operate its business in the ordinary course according to the Budget attached to the Motion. As adequate protection, Debtor proposes replacement liens and reporting of information to secured parties as set forth in the Stipulated Order.

In this connection, the Eighth Circuit Court of Appeals has stated:

> In any given case, the bankruptcy court must necessarily (i) establish the value of the secured creditor's interest, (ii) identify the risk to the secured creditor's value resulting

> from the debtor's request for use of cash collateral, and (iii) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence.

*In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985). The adequate protection offered by Debtor satisfies the requirements imposed by the Bankruptcy Code and stated by the Eighth Circuit, and does not prejudice the rights of other creditors.

## CONCLUSION

For reasons set forth in the Motion and this Memorandum, Debtor respectfully requests that the Motion be granted.

Dated: September 28, 2009    RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY,
A PROFESSIONAL ASSOCIATION

By    /e/  Michael L. Meyer (72527)
         Will R. Tansey (0323056)

4545 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 332-8511

ATTORNEYS FOR DEBTOR

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

SCHWING AMERICA, INC.           Bky Case No. 09-36760
                                                              Chapter 11

           Debtor.

## UNSWORN CERTIFICATE OF SERVICE

       I, Michael L. Meyer, declare under penalty of perjury that on September 28, 2009, copies of Debtor's:

1. Notice of Hearing and Motion for Expedited Hearing and For Interim and Final Orders Authorizing Postpetition Secured Financing, Use of Cash Collateral, and the Granting of Adequate Protection;
2. Memorandum of Law; and
3. Proposed Order Authorizing Interim Use of Cash Collateral and Interim Post-Petition Financing;

were served by sending to each party a copy thereof as noted on the attached Service List.

Dated: September 28, 2009                /e/ Michael L. Meyer, 72527

| | | |
|---|---|---|
| ELECTRONIC<br>UNITED STATES TRUSTEE<br>1015 U S COURTHOUSE<br>300 SOUTH FOURTH STREET<br>MINNEAPOLIS MN 55415 | MINN DEPT OF REVENUE<br>COLLECTION ENFORCEMENT<br>551 BANKRUPTCY / P O 64447<br>ST PAUL MN 55164 | INTERNAL REVENUE SERVICE<br>ATTN SPECIAL PROCEDURES<br>WELLS FARGO PL STOP 5700<br>30 EAST SEVENTH<br>ST PAUL MN 55101 |
| IRS DISTRICT COUNSEL<br>650 GALTIER PLAZA<br>380 JACKSON STREET<br>ST PAUL MN 55101 | US ATTORNEY<br>600 U S COURHOUSE<br>300 SOUTH FOURTH STREET<br>MINNEAPOLIS MN 55415 | ELECTRONIC<br>SCHWING AMERICA INC<br>ATTN BRIAN MOGENSEN<br>5900 CENTERVILLE ROAD<br>ST PAUL MN 55127 |
| ELECTRONIC<br>WELLS FARGO BANK NA<br>C/O DANIEL C BECK / MICHAEL A ROSOW<br>WINTHROP & WEINSTINE PA<br>225 SOUTH SIXTH STREET STE 3500<br>MINNEAPOLIS MN 55402 | ELECTRONIC<br>BANK OF AMERICA<br>C/O DANIEL C BECK<br>WINTHROP & WEINSTINE PA<br>225 SOUTH SIXTH STREET STE 3500<br>MINNEAPOLIS MN 55402 | ELECTRONIC<br>CON FORMS DIVISION<br>ATTN SHELLY<br>777 MARITIME DRIVE<br>P O BOX 308<br>PORT WASHINGTON WI 53074-0308 |
| ELECTRONIC<br>SNR WALZLAGER GMBH<br>ATTN NICOLE<br>P O BOX 330410<br>DUSSELDORF GERMANY 40437 | ELECTRONIC<br>RYERSON<br>ATTN TINA HALVORSON<br>24487 NETWORK PLACE<br>CHICAGO IL 60673-1244 | ELECTRONIC<br>DYNAMIC ENGINEERING<br>ATTN JANICE -ACCOUNTING<br>P O BOX 697<br>WATERTOWN SD 57201-0697 |
| ELECTRONIC<br>KOLSTAD COMPANY<br>ATTN PAUL O'BRIEN<br>8501 NAPLES STREET NE<br>BLAINE MN 55449 | ELECTRONIC<br>ENGINEERED CHASSIS SYSTEMS LLC<br>ATTN CHARITY<br>290 LAGRANDEUR DRIVE<br>SOMERSET WI 54025 | BRIGGS & MORGAN<br>332 MINNESOTA STREET W #2200<br>ST PAUL MN 55101 |
| ELECTRONIC<br>NEUFAB SPECIALTY FAB<br>ATTN CATHY<br>2568 EAGLE RIDGE DRIVE<br>P O BOX 51<br>RED WING MN 55066 | HDI NI DORTMUND<br>44137 DORTMUND<br>BETENSTRABE GERMANY 44137 | DEUTZ CORPORATION<br>3883 STEVE REYNOLD BLVD<br>NORCROSS GA 30093 |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

SCHWING AMERICA, INC.

        Debtor.

Bky Case No. 09-36760
Chapter 11

**ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL
AND INTERIM POST-PETITION FINANCING**

This matter came on for hearing on Debtor's Motion for Order (I) Granting Expedited Relief; (II) Authorizing Debtor to Obtain Post-Petition Financing on an Interim and Final Basis; (III) Authorizing Debtor to Use Cash Collateral on an Interim and Final Basis; and (IV) Granting Adequate Protection (the "Motion") filed by Schwing America, Inc. (the "Debtor"). Appearances were noted in the record. Based on the documents on file with the Court and the record and argument at the hearing,

IT IS ORDERED:

1. Debtor is authorized to use up to $2,060,000 of the cash collateral subject to the security interest of Wells Fargo Bank, National Association and Bank of America, N.A. (together, the "Lender") for the uses set forth on the projections attached to the Motion as Exhibit B through October 15, 2009.

2. As adequate protection to the extent of use of Lender's cash collateral, Debtors are authorized to:

    a. Grant to Lender a replacement lien in Debtor's post-petition assets, which lien shall have the same priority, dignity and effect as Lender's prepetition lien on the prepetition property of Debtor;

    b. Grant to Lender a second mortgage on its real property as described in the Motion;

    c. Pay the real estate taxes as described in the Motion; and

    d. Pay interest to the Lender as interest comes due.

3. All cash collateral of the Lender collected by Debtor which is not used under the terms of this Order shall be deposited by Debtor with the Lender and remain segregated from Debtor's other cash.

4. All cash collateral in the possession of the Lender as of the date of this Order or collected thereafter shall be turned over to Debtor.

5. Debtor is authorized to borrow from its parent, Schwing GmbH, on the terms set forth in the Motion, up to $310,000 (the "Post-Petition Loan") for the uses set forth on the projections attached to the Motion as Exhibit B through October 15, 2009.

6. The Post-Petition Loan shall be secured by a lien on all of Debtor's assets which is subordinate to the liens of the Lender.

Dated: October __, 2009                                   _____
                                                                 Nancy C. Dreher, Chief Judge
                                                                 United States Bankruptcy Court