## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

SCHWING AMERICA, INC.                    Bky Case No. 09-36760
                                         Chapter 11

          Debtor.

## SUPPLEMENT TO MOTION FOR ORDER (I) GRANTING EXPEDITED RELIEF; (II) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING ON AN INTERIM AND FINAL BASIS; (III) AUTHORIZING DEBTOR'S TO USE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS; AND (IV) GRANTING ADEQUATE PROTECTION

Debtor, Schwing America, Inc., files this Supplement to Motion for Order (I) Granting Expedited Relief; (II) Authorizing Debtors to Obtain Post-Petition Financing on an Interim and Final Basis; (III) Authorizing Debtor's to Use Cash Collateral on an Interim and Final Basis; and (IV) Granting Adequate Protection.  The hearing on this motion is set for October 15, 2009 at 2:00 p.m.

1.      Attached hereto as **Exhibit C** is a proposed form of Credit Agreement between Schwing GmbH as lender ("Parent") and the Debtor.

2.      The following is a summary of the Credit Agreement as required by Bankruptcy Rule 4001(c)(1):

     a.  The interest rate is 7% per annum unless a default occurs, in which case it increases to 12% per annum (section 1.1(e) and (j));

     b.  The loan matures upon confirmation of the plan (section 2.2);

     c.  Events of default (section 6.1) include failure to pay, breach of the Financing Order, and the incorrectness of a representation or warranty;

d.  The loan is secured by a junior lien on the assets of the estate (section 2.8);

e.  The loan is available up to the sum of $3,250,000 to pay operating expenses if

needed (section 2.1).

3.      Other than the granting of a junior lien, the Credit Agreement does not provide for

any of the enumerated items under Bankruptcy Rule 4001(c)(1)(B).


Dated:  October 8, 2009                    RAVICH MEYER KIRKMAN
                                           McGRATH NAUMAN & TANSEY,
                                           A PROFESSIONAL ASSOCIATION

                                           By    /e    Michael L. Meyer (72527)
                                                       Will R. Tansey (323056)

                                           4545 IDS Center, 80 South Eighth Street
                                           Minneapolis, MN 55402

                                           ATTORNEYS FOR DEBTOR

# EXHIBIT C

## CREDIT AGREEMENT

Dated as of October \_\_\_, 2009

Schwing America, Inc., a Minnesota Corporation (the "Borrower"), located at 5900 Centerville Road, White Bear Lake, MN 55127 and Schwing GmbH, a German limited liability corporation (the "Lender"), with offices at Heerstraße 944653, Herne, Germany, agree as follows:

ARTICLE I.

DEFINITIONS

Section 1.1.    Certain Definitions.  As used in this Agreement, the following terms shall have the following meanings (such meanings to be equally applicable to singular and plural forms of the terms defined):

(a)  "Advances" is defined in Section 2.1.

(b)  "Bankruptcy Case" means the bankruptcy proceeding in which the Borrower is the debtor pending at Case No. 09-36760 before the United States Bankruptcy Court for the District of Minnesota.

(c)  "Business Day" means any day other than a Saturday, Sunday or a public holiday or the equivalent under the laws of the State of Minnesota or the United States of America.

(d)  "Collateral" means all of the Borrower's assets, including, without limitation, all property of the estates of the Borrower, and all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, patents, trademarks, copyrights and licensees therefore, general intangibles, payment intangibles, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, leases, money, investment property, deposit accounts, all commercial tort claims and all causes of action arising under the

Bankruptcy Code or otherwise, and all cash and non-cash proceeds, rents, products and profits of any of the foregoing.

(e) "Default Interest Rate" means the rate of twelve percent (12.0%) per annum.

(f) "Event of Default" means one of the events specified in Section 6.1.

(g) "Financing Order" means the orders, including interim and final orders, in form and substance satisfactory to the Lender, entered in the Bankruptcy Case that, among other things, approves this Agreement and authorizes the borrowing of Advances by the Borrower.

(h) "Loan Documents" means this Agreement, the Note, the Security Agreement and all other documents to be executed in connection with this Agreement.

(i) "Maturity Date" is defined in Section 2.2.

(j) "Non-Default Interest Rate" means the rate of seven percent (7.0%) per annum.

(k) "Note" means the Note described in Section 2.3.

(l) "Permitted Liens" means any property perfected and unavoidable liens and mortgages on, and security interests in, the Borrowers' property maintained by the Prepetition Lenders.

(m) "Person" means an individual, corporation, limited liability company, partnership, joint venture, trust or unincorporated organization or governmental agency or political subdivision thereof.

(n) "Prepetition Lenders" means Wells Fargo Bank, National Association and Bank of America, N.A.

(o) "Security Agreement" is defined in Section 3.1(b).

(p) "Maturity Date" is defined in Section 2.1.

Section 1.2.    <u>Accounting and Other Terms</u>.  All accounting terms not specifically defined in this Agreement shall be construed in accordance with generally accepted accounting principles consistently applied as such principles may change from time to time.  Other terms defined herein shall have the meanings ascribed to them herein.

ARTICLE II.

<u>TERM LOAN</u>

Section 2.1.    <u>Discretionary Multiple Draw Term Loan</u>.  The Borrower has requested that the Lender make advances to the Borrower from time to time for operating expenses and other general business purposes.  THE LENDER HAS NOT COMMITTED TO PROVIDING ANY SUCH ADVANCES AND MAY, IN ITS SOLE DISCRETION, DECIDE NOT TO MAKE ANY SUCH ADVANCES.  If the Lender, in its discretion, decides to make any such advances requested by the Borrower, such advances (the "<u>Advances</u>") shall not exceed an aggregate principal balance at any time outstanding in excess of $3,520,000.00.

Section 2.2.    <u>Maturity Date</u>.  All obligations under this Agreement and the Note will become due and payable on the date that is the earliest to occur of the following dates (the "<u>Maturity Date</u>"): (a) the effective date of a confirmed plan of reorganization in the Bankruptcy Case; (b) the date on which all of the obligations under this Agreement and the Note shall become due and payable in accordance with the terms of this Agreement; or (c) such other date as the parties may agree and the Bankruptcy Court may authorize.

Section 2.3.    <u>The Note</u>.  The Advances made by the Lender shall be evidenced by a promissory note (the "<u>Note</u>") that is in substantially the form of Exhibit A attached hereto and is delivered to the Lender pursuant to Article III.

Section 2.4.    <u>Making of Advances</u>.  The Borrower may request Advances under this Agreement in an amount of not less than $200,000.00 by submitting to the Lender the form of

Draw Request attached hereto as Exhibit B. Any request for an Advance shall be deemed to be a representation that the Borrower's representations and warranties contained in Section 4.1 are true and correct as of the date of the Advance and that no event has occurred and is continuing, or will result from such Advance, that constitutes an Event of Default or would constitute an Event of Default but for the requirement that notice be given or time elapse or both.

Section 2.5.    Interest and Payments.  The Borrower shall repay, and shall pay interest on, the aggregate unpaid principal amount of all Advances at the Non-Default Interest Rate except that after and during the continuance of an Event of Default, the Borrower shall pay interest at the Default Interest Rate.  All payments of principal, interest and fees under this Agreement shall be paid on the Maturity Date to the Lender in immediately available funds.  All computations of interest shall be made by the Lender on the basis of the actual number of days elapsed in a year of 360 days.  Whenever any such payment shall be due on a non-Business Day, such payment shall be made on the next succeeding Business Day, and such extension of time shall be included in the computation of interest.

Section 2.6.    Voluntary Prepayment.  The Borrower may prepay the Note in whole or in part at any time without premium or penalty.

Section 2.7.    Use of Proceeds.  To the extent the Borrower's use of the Prepetition Lenders' cash collateral is insufficient to fund the Borrower's working capital obligations, any Advances from the Lender shall be used for working capital purposes and for the payment of allowed administrative expenses incurred by the Borrower in the Bankruptcy Case.  No Advances may be used (a) for the modification, stay, or amendment of the Financing Order without the consent of the Lender, or (b) in pursuit of any action that would constitute an Event of Default.

Section 2.8.    Collateral: Grant of Lien and Security Interest.   As security for the full and timely payment and performance of all of Borrower's obligations under the Loan Documents, the Borrower grants the Lender a junior lien on and security interest in all Collateral that that is subject to Permitted Liens, as security for the performance of the Borrower's obligations under this Agreement and the Note (together, the "Security Interest").  The Security Interest shall be deemed valid and perfected by entry of the Financing Order and the Lender shall not be required to file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action in order to validity or perfect the Security Interest granted pursuant to this Agreement or the Financing Order; provided that the Lender shall be permitted to file any financing statements, mortgages, certificates of title, notices of lien or similar instruments in any jurisdiction or filing office or to take any other action with respect to the Security Interested granted pursuant to this Agreement and the Borrower shall take any other actions reasonably requested by the Lender in connection therewith.

ARTICLE III.

CONDITIONS OF LENDING

Section 3.1.    Conditions Precedent to Initial Advance.  Unless otherwise waived by the Lender, no Advances shall be made hereunder unless the Lender shall have received on or before the date of such Advance (a) the Note, properly executed and delivered on behalf of the Borrower; and (b) a Financing Order entered in the Bankruptcy Case.

Section 3.2.    Conditions Precedent to Each Advance.  Unless otherwise waived by the Lender, no subsequent Advance shall be made hereunder unless; (a) the representations and warranties contained in Section 4.1 of this Agreement are correct on and as of the date of such Advance; (b) no event has occurred and is continuing, or will result from such Advance, that

constitutes an Event of Default or would constitute an Event of Default but for the requirement that notice be given or time elapse or both; and (c) the Financing Order is unmodified and in full force and effect.

ARTICLE IV.

REPRESENTATIONS AND WARRANTIES

Section 4.1.　　<u>Representations and Warranties of the Borrower</u>.  To induce the Lender to make the Advances, the Borrower represents and warrants as follows:

(a) <u>Existence of Borrower</u>.  The Borrower is a company duly formed, validly existing and in good standing under the laws of Minnesota.

(b) <u>Authority to Execute</u>.  The execution, delivery and performance by the Borrower of the Loan Documents are within the Borrower's corporate powers, have been duly authorized by all necessary company action, do not and will not conflict with any provision of law or of the charter or bylaws of the Borrower or of any agreement or contractual restriction binding upon or affecting the Borrower or any of its property, and need no further equity holder or creditor consent.

(c) <u>Binding Obligation</u>.  This Agreement is, and the other Loan Documents when delivered hereunder will be, legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their respective terms.

(d) <u>Governmental Approval</u>.  No consent of, or filing with, any governmental authority is required on the part of the Borrower in connection with the execution, delivery or performance of any Loan Documents except for the Bankruptcy Court approvals described in Section 3.1.

## ARTICLE V.

## COVENANTS OF THE BORROWER

Section 5.1.    Affirmative Covenants.  So long as the Note shall remain unpaid or this Agreement shall remain in effect, the Borrower will, unless the Lender shall give its prior written consent:

(a) Financial Reporting.  Furnish to the Lender: (i) as soon as available and in any event within 15 days after the end of each month of each fiscal year of the Borrower, balance sheets of the Borrower as of the end of such month and statements of income and retained earnings of the Borrower for the period commencing at the end of the previous fiscal year and ending with the end of such month; (ii) copies of all reports filed with the Office of the United States Trustee in the Bankruptcy Case; (iii) any budgets prepared by the Borrower; and (iv) such other information concerning the conditions or operations, financial or otherwise, of the Borrower as the Lender from time to time may reasonably request.

(b) Visitation Rights.  At any reasonable time and from time to time, permit the Lender or any agents or representatives thereof, to examine and make copies of and abstracts from the records and books of account of, and visit the properties of, the Borrower, and to discuss the affairs, finances and accounts of the Borrower with any of its officers or governors.

(c) Notification of Default, Etc.  Notify the Lender as promptly as practicable (but in any event not later than five (5) Business Days) after the Borrower obtains knowledge of: (i) the occurrence of any event which constitutes an Event of Default or which would constitute an Event of Default with the passage of time or the giving of notice or both; or (ii) the commencement of any litigation or governmental proceedings of any type that could materially adversely affect the financial condition or business operations of the Borrower.

(d) <u>Compliance Certificate</u>.  At the time any financial statement is required to be provided to the Lender under this Agreement, the Borrower will provide to the Lender a certificate of the chief financial officer or other responsible officer of the Borrower substantially in the form of Exhibit C attached hereto.  If that certificate shows that an Event of Default or any event that would constitute an Event of Default with the passage of time or the giving of notice or both, has occurred, the certificate shall state in reasonable detail the circumstances surrounding such event and action proposed by the Borrower to cure such event.

(e) <u>Keeping of Financial Records and Books of Account</u>.  Maintain proper financial records in accordance with generally accepted accounting principles consistently applied that fully and correctly reflect all financial transactions and all assets and liabilities of the Borrower.

(f) <u>Maintenance of Insurance</u>.  Maintain such insurance with reputable insurance carriers as is normally carried by companies engaged in similar businesses and owning similar property, and name the Lender as loss payee on all policies insuring personal property in which the Lender has a security interest and provide the Lender with certificates of insurance evidencing its status as a loss payee.  The loss payee endorsement shall provide for payment to the Lender notwithstanding any acts or omissions of the Borrower and shall require notice to the Lender 30 days prior to the expiration or cancellation of the insurance.

(g) <u>Maintenance of Properties, Etc</u>.  Maintain and preserve all of its properties, necessary or useful in the proper conduct of its business, in good working order and condition, ordinary wear and tear excepted.

(h) <u>Payment of Taxes</u>.  Pay all taxes, assessments and governmental charges of any kind payable by it as such taxes, assessments and charges become due and before any

penalty shall be imposed, except as the Borrower shall contest in good faith and by appropriate proceedings providing such reserves as are required by generally accepted accounting principles and except for taxes, assessments and charges which were payable before commencement of the Bankruptcy Case.

(i) <u>Preservation of Company Existence, Etc</u>.  Preserve and maintain its company existence, rights, franchises and privileges in the jurisdiction of its formation, and qualify and remain qualified, as a foreign company in each jurisdiction in which such qualification is necessary or desirable in view of its business and operations or the ownership of its properties.

Section 5.2.    <u>Negative Covenants</u>.  So long as the Note shall remain unpaid or this Agreement shall remain in effect, the Borrower will not, unless the Lender shall give its prior written consent:

(a) <u>Liens</u>.  Create or suffer to exist any mortgage, pledge, lien, security interest or other encumbrance with respect to any assets now owned or hereafter acquired by the Borrower except (i) those encumbrances made in favor of the Lender, (ii) purchase money liens on, or leases of equipment, (iii) cash security deposits made by the Borrower with lessors and vendors in the ordinary course of business, (iv) security interests in bank deposit accounts held by the bank in which such accounts are maintained, and (v) Permitted Liens.

(b) <u>Guaranties, Etc</u>.  Assume, guarantee, endorse or otherwise become liable upon the obligation of any person except by endorsement of negotiable instruments for collection in the ordinary course of business.

(c) <u>Change in Nature of Business</u>.  Make any material change in the nature of the business of the Borrower, taken as a whole, as carried on at the date hereof.

(d) <u>Financing Order</u>.  Violate, or seek to modify, appeal, or otherwise affect, the terms of any Financing Order.

ARTICLE VI.

<u>DEFAULT</u>

Section 6.1.    <u>Events of Default</u>.  "Events of Default" in this Agreement means any of the following events:

(a)  Failure of the Borrower to pay the principal of the Note when due or, if payable on demand, upon demand;

(b)  Failure of the Borrower to pay any interest or fees required to be paid hereunder or under the Note when due;

(c)  Any representation or warranty shall prove to have been incorrect in any material respect when made or the Borrower shall dispose of any collateral described in the Security Agreement in violation of the Security Agreement;

(d)  Default in performance of any other covenant or agreement and continuance of such default for a period of ten (10) days after written notice thereof to such Person by the Lender;

(e)  The Financing Order shall have been stayed, amended, modified, reversed or vacated without the consent of the Lender;

(f)  The appointment of a trustee, or appointment of an examiner with expanded powers;

(g)  The dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case to a Chapter 7 Case, or the Borrower shall file a motion or other pleading seeking the dismissal of its Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise;

(h) The entry of an order by the Bankruptcy Court granting relief from the automatic stay to allow any creditor to execute upon or enforce a lien on any collateral unless the Lender consents to the entry of such order;

(i) An order is entered confirming a plan of reorganization which does not provide for payment in full in cash of all obligations under the Loan Documents unless otherwise agreed to by the Lender.

Section 6.2.    Rights and Remedies.  If any Event of Default shall occur and be continuing, the Lender may seek relief under Section 362 of the Bankruptcy Code, upon expedited notice, and without further notice or demand upon the Borrowers (except as expressly set forth below) exercise any or all of the following rights and remedies:

(a) Declare the Note, all interest thereon, and all other obligations under, or pursuant to, any Loan Document to be immediately due and payable, and upon such declaration such Note, interest and other obligations shall immediately be due and payable, without presentment, demand, protest or any notice of any kind, all of which are expressly waived;

(b) Subject to the Financing Order, exercise any right or remedy under the Security Agreement, any other right or remedy of a secured party under the Uniform Commercial Code as in effect in Minnesota or exercise any other right or remedy available to the Lender at law or in equity.

ARTICLE VII.

MISCELLANEOUS

Section 7.1.    No Waiver; Cumulative Remedies.  No failure or delay on the part of the Lender in exercising any right or remedy under, or pursuant to, any Loan Document shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, remedy or power preclude other or further exercise thereof, or the exercise of any other right, remedy or power.

The remedies in the Loan Documents are cumulative and are not exclusive of any remedies provided by law.

Section 7.2. <u>Amendments and Waivers</u>. No amendment or waiver of any provision of any Loan Document shall be effective unless such amendment or waiver is in writing and is signed by the Lender, and such amendment or waiver shall be effective only in the specific instance and for the specific purpose for which it was given.

Section 7.3. <u>Notices, Etc</u>. All notices and other communications provided for hereunder shall be in writing and mailed or delivered to the addresses stated in the preamble hereof. All such notices and communications shall be effective when deposited in the mails, addressed as provided above, or when delivered, except that notices to the Lender pursuant to the provisions of Article II shall not be effective until received by the Lender.

Section 7.4. <u>Costs and Expenses</u>. The Borrower agrees to pay upon confirmation of a plan of reorganization, or at such earlier time as the parties may agree and the Bankruptcy Court may order, all costs and expenses of the Lender including reasonable attorneys' fees and legal expenses, including reasonable attorneys' fees and expenses incurred in connection with the administration and enforcement of the Loan Documents (whether suit is commenced or not).

Section 7.5. <u>Governing Law</u>. All Loan Documents shall be governed by the laws of the State of Minnesota. Any term used in this Agreement and not otherwise defined shall have the definition given that term in the Uniform Commercial Code as in effect in the State of Minnesota from time to time, and such definition automatically shall change on the effective date of any amendment to the Uniform Commercial Code that changes such definition. If any term in this Agreement shall be held to be illegal or unenforceable, the remaining portions of this

Agreement shall not be affected, and this Agreement shall be construed and enforced as if this Agreement did not contain the term held to be illegal or unenforceable.

Section 7.6. <u>Binding Effect; Assignment</u>. All Loan Documents shall be binding upon and inure to the benefit of the Borrower and the Lender and their respective successors and assigns. The Borrower shall not have the right to assign its rights or interest under any of the Loan Documents without the prior written consent of the Lender.

Section 7.7. <u>Incorporation of Terms of Financing Order</u>. The recitals, terms and conditions of any Financing Order are incorporated into this Agreement by reference in their entirety.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date first above written.

Schwing America, Inc.

By: _____

Its: _____

# EXHIBIT A

## PROMISSORY NOTE

$3,520,000.00                                             Dated: October ___, 2009


For value received, Schwing America, Inc., a Minnesota corporation (the "Borrower"), promises to pay to the order of Schwing GmbH (the "Lender") in lawful money of the United States of America, the principal amount of $3,520,000.00 or, if less, the aggregate unpaid principal amount of Advances made by the Lender to the Borrower pursuant to the terms of that certain Credit Agreement of even date herewith (the "Loan Agreement"); together with interest on any and all principal amounts remaining unpaid hereon from the date of this Note until such principal amounts are fully paid at the Non-Default Interest Rate or as otherwise provided for in the Loan Agreement. Interest shall accrue on any Advances outstanding with all principal and interest to be repaid on the Maturity Date.

All Advances made by the Lender to the Borrower pursuant to the Loan Agreement and all principal payments made by the Borrower on this Note shall be recorded by the Lender. This Note is the Note referred to in, and is entitled to the benefits of, the Loan Agreement which, among other things, contains provisions for the acceleration of the maturity of this Note upon the happening of certain stated events, for an increase to the interest rate upon the happening of certain stated events, and for prepayments of the principal amount due under this Note upon stated terms and conditions.

Schwing America, Inc.

By: _____

Its: _____

# DRAW REQUEST

## - No. ………  -

| | | |
|---|---|---|
| Borrower | : | Schwing America Inc. |
| Address | : | 5900 Centerville Road, White Bear Lake, Minnesota 55127, United States of America |
| Representative | : | Brian Mogensen |
| Lender | : | Schwing GmbH |
| Address | : | Heerstr. 9-27, 44653 Herne, Germany |
| Representative | : | Gerhard Schwing |

This Draw Request is submitted in accordance with Section 5.1(d) of the Credit Agreement (the "Loan Agreement") dated as of October __, 2009 between the Borrower and Lender.

### § 1 - LOAN

The Lender herewith makes and grants an Advance to the Borrower in the amount of USD ………………. The Lender grants the Advance to the Borrower from the day of signing.

### § 2 - PAYMENT OF INTERESTS

The interest per annum to be paid is 7.0 percent. The interests have to be paid to the Lenders account free of charge. The exact dates for payment are set forth in the Loan Agreement.

### § 3 - LOAN REPAYMENT

The end of duration is the Maturity Date. On the Maturity Date, the Advance has to be repaid in one (1) rate. Borrower may repay the Advance earlier.

# EXHIBIT B

## § 4 - LOAN SECURITIES

The Advance is secured by the Security Interest.

## § 5 - BEING IN EFFECT

The Loan Agreement will be effective from the date of signing.  The effective period will be ended upon the Borrower repaying all Advances, interest and any other applicable fees thereon.

Schwing America, Inc.

By: _____

Its: _____

# EXHIBIT C

## FORM OF COMPLIANCE CERTIFICATE

I, the _____ of Schwing America, Inc. (the "Borrower"), hereby

provide this Compliance Certificate in accordance with Section 5.1(d) of the Credit Agreement

(the "Agreement") dated as of October __, 2009 between the Borrower and Schwing GmbH:

I certify that as of the date hereof:

(1)     The representations and warranties of the Borrower contained in Article IV of the
Agreement are correct as though made on the date hereof.

(2)     No event has occurred and is continuing that constitutes an Event of Default
under the Agreement or would constitute an Event of Default but for the
requirement that notice be given or time elapse or both.


Dated: _____        Schwing America, Inc.

By: _____

Its: _____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

SCHWING AMERICA, INC.                              Bky Case No. 09-36760
                                                                          Chapter 11

                              Debtor.

## UNSWORN CERTIFICATE OF SERVICE

      I, Michael L. Meyer, declare under penalty of perjury that on October 8, 2009, copies of Debtor's:

1.      Supplement to Motion for Order (I) Granting Expedited Relief; (II) Authorizing Debtors to Obtain Post-Petition Financing on an Interim and Final Basis; (III) Authorizing Debtor's to Use Cash Collateral on an Interim and Final Basis; and (IV) Granting Adequate Protection,

were served by sending to each party a copy thereof as noted on the attached Service List.

Dated:  October 8, 2009                              /e/  Michael L. Meyer, 72527

ELECTRONIC
MICHAEL R FADLOVICH
UNITED STATES TRUSTEE
1015 U S COURTHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS MN 55415

MINN DEPT OF REVENUE
COLLECTION ENFORCEMENT
551 BANKRUPTCY / P O 64447
ST PAUL MN 55164

INTERNAL REVENUE SERVICE
ATTN SPECIAL PROCEDURES
WELLS FARGO PL STOP 5700
30 EAST SEVENTH
ST PAUL MN 55101

IRS DISTRICT COUNSEL
650 GALTIER PLAZA
380 JACKSON STREET
ST PAUL MN 55101

US ATTORNEY
600 U S COURHOUSE
300 SOUTH FOURTH STREET
MINNEAPOLIS MN 55415

ELECTRONIC
SCHWING AMERICA INC
ATTN BRIAN MOGENSEN
5900 CENTERVILLE ROAD
ST PAUL MN 55127

ELECTRONIC
WELLS FARGO BANK NA
C/O DANIEL C BECK / MICHAEL A ROSOW
WINTHROP & WEINSTINE PA
225 SOUTH SIXTH STREET STE 3500
MINNEAPOLIS MN 55402

ELECTRONIC
BANK OF AMERICA
C/O DANIEL C BECK
WINTHROP & WEINSTINE PA
225 SOUTH SIXTH STREET STE 3500
MINNEAPOLIS MN 55402

ELECTRONIC
SCHWING GmbH
C/O ROBERT T KUGLER
LEONARD STREET AND DEINARD
150 SOUTH FIFTH STREET STE 2300
MINNEAPOLIS MN 55402

ELECTRONIC
CON FORMS DIVISION
ATTN SHELLY
777 MARITIME DRIVE
P O BOX 308
PORT WASHINGTON WI 53074-0308

ELECTRONIC
SNR WALZLAGER GMBH
ATTN NICOLE
P O BOX 330410
DUSSELDORF GERMANY 40437

ELECTRONIC
RYERSON
ATTN TINA HALVORSON
24487 NETWORK PLACE
CHICAGO IL 60673-1244

ELECTRONIC
DYNAMIC ENGINEERING
ATTN ALEN HENRICKS - PRESIDENT
P O BOX 697
WATERTOWN SD 57201-0697

ELECTRONIC
KOLSTAD COMPANY
ATTN PAUL O'BRIEN
8501 NAPLES STREET NE
BLAINE MN 55449

ELECTRONIC
ENGINEERED CHASSIS SYSTEMS LLC
C/O MICHAEL S DIETZ
DUNLAP & SEEGER PA
206 SOUTH BROADWAY   STE 505
P O BOX 549
ROCHESTER MN 55903-0549

ELECTRONIC
NUSS TRUCK GROUP INC
C/O MICHAEL S DIETZ
DUNLAP & SEEGER PA
206 SOUTH BROADWAY   STE 505
P O BOX 549
ROCHESTER MN 55903-0549

BRIGGS & MORGAN
332 MINNESOTA STREET W #2200
ST PAUL MN 55101

ELECTRONIC
NEUFAB SPECIALTY FAB
ATTN CATHY
2568 EAGLE RIDGE DRIVE
P O BOX 51
RED WING MN 55066

HDI NI DORTMUND
44137 DORTMUND
BETENSTRABE GERMANY 44137

DEUTZ CORPORATION
3883 STEVE REYNOLD BLVD
NORCROSS GA 30093