# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

SCHWING AMERICA, INC.                     Bky Case No. 09-36760
                                          Chapter 11

                Debtor.

## APPLICATION FOR APPROVAL OF EMPLOYMENT
## OF AUDITORS AND TAX CONSULTANTS FOR DEBTOR

TO:    United States Bankruptcy Judge and the United States Trustee and other parties in interest identified in Local Rule 2014-1.

1.      The above-named debtor ("Debtor") has filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, Title 11, United States Code, and require auditors and tax consultants in the course of this case.

2.      Debtor wishes to employ the firm of KPMG LLP ("KPMG") to assist them as their auditors and tax consultants during the case. With the Court's authorization, KPMG would provide audit and tax services for the Debtor for 2009. This Court has jurisdiction over this application (the "Application") pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005, and Local Rule 1070-1. This is a core proceeding. The petition in this case was filed on September 28, 2009. The case is now pending in this Court.

3.      This Application arises under 11 U.S.C. §§ 327(a), 328, and 1107(b), and Bankruptcy Rule 2014. This Application is filed under Local Rules 2014-1 and 9013-4. Debtor seeks an order authorizing the engagement of KPMG as the auditors and tax consultants for the Debtor.

4.      Debtor seeks to engage KPMG as their auditors and tax consultants because they recognize that these audit and tax professionals are highly competent and experienced in

providing audit services, including in the context of bankruptcy retentions, and that KPMG's employment is in the best interest of the estate.

5.     As of the filing, Debtor owed KPMG $53,717 for pre-petition services. At the Debtor's specific request, KPMG has on occasion provided certain necessary audit services to the Debtor in the past.  Subject to the approval of the Court, Debtor proposes that KPMG's ongoing employment be on the applicable and reasonable hourly rates set forth in the engagement letters both dated March 30, 2010 (the "Engagement Letters") attached hereto as Exhibit A.

6.     In accordance with paragraph 8 of this Court's Instructions for Filing a Chapter 11 Case, Debtor proposes that (a) KPMG be authorized with Debtor's Counsel's assistance to schedule a hearing on its applications for allowance of fees and reimbursement of expenses not more than once every ninety (90) days, (b) KPMG be allowed to submit regular monthly bills to the Debtor, with copies to the Committee of Unsecured Creditors and the Office of the United States Trustee, and (c) the Debtor be authorized to pay up to 80% of such fees and 100% of costs on a monthly basis, subject to later Court approval.

7.     Debtor has reviewed the Unsworn Declaration of Benjamin B. Reinhardt and believes that the engagement of KPMG is in the best interests of the estate and that KPMG does not represent or hold any interest adverse to the estates and is "disinterested" as required by law except for the prepetition debt disclosed above.  In the event the United States Trustee, or other party raises an objection that can not be resolved or should the Court require it, Debtor requests that a hearing be scheduled.

8.     No previous application has been made for employment of auditors and tax consultants.

9.     This application has been served on the parties set out in Local Rule 2014-1(a).

WHEREFORE, the above-named Debtor hereby respectfully requests an order approving the engagement of the professional services firm of KPMG as its auditors and tax consultants.

Dated: ~~March~~ April 5th ___, 2010

_____
Brian Mogensen

# EXHIBIT A



**KPMG LLP**
4200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

**PRIVATE & CONFIDENTIAL**

March 30, 2010

Brian Mogensen
Chief Financial Officer
Schwing America, Inc.
5900 Centerville Rd.
White Bear Lake, MN 55127

Dear Brian,

This letter (hereafter, the Engagement Letter) confirms our understanding of our engagement to provide professional services to Schwing America, Inc, and subsidiaries (hereafter, the Company).

## Objectives and Limitations of Services

### Audit Services

We will issue a written report upon the completion of our audit of the consolidated financial statements of the Company as set forth in Appendix I.

We have the responsibility to conduct and will conduct the audit of the consolidated financial statements in accordance with auditing standards generally accepted in the United States of America, with the objective of expressing an opinion as to whether the presentation of the financial statements, taken as a whole, conforms with U.S. generally accepted accounting principles.

In conducting the audit, we will perform tests of the accounting records and such other procedures, as we consider necessary in the circumstances, to provide a reasonable basis for our opinion on the consolidated financial statements. We also will assess the accounting principles used and significant estimates made by management, and evaluate the overall consolidated financial statement presentation.

Our audit of the consolidated financial statements is planned and performed to obtain reasonable, but not absolute, assurance about whether the consolidated financial statements are free of material misstatement, whether caused by error or fraud. Absolute assurance is not attainable because of the nature of audit evidence and the characteristics of fraud. Therefore, there is a risk that material errors, fraud (including fraud that may be an illegal act), and other illegal acts may exist and not be detected by an audit of the consolidated financial statements performed in accordance with the auditing standards generally accepted in the United States of America. Also, an audit is not designed to detect matters that are immaterial to the consolidated financial statements.

Our report will be addressed to the Board of Directors of the Company (hereafter, the Board). We cannot provide assurance that an unqualified opinion will be rendered. Circumstances may arise in which it is necessary for us to modify our report or withdraw from the engagement.

While our report may be sent to the Company electronically for your convenience, only the hard copy report is to be relied upon as our work product.

KPMG LLP, a U.S. limited liability partnership, is the U.S.
member firm of KPMG International, a Swiss cooperative



### *Internal Control over Financial Reporting*

In planning and performing our audit of the consolidated financial statements, we will consider the Company's internal control in order to determine the nature, timing, and extent of our audit procedures for the purpose of expressing an opinion on the consolidated financial statements and not to provide assurance on internal control.

The objective of our audit of the financial statements is not to report on the Company's internal control, and we are not obligated to search for material weaknesses or significant deficiencies as part of our audit of the consolidated financial statements. A material weakness is a deficiency, or combination of deficiencies, in internal control, such that there is reasonable possibility that a material misstatement of the consolidated financial statements will not be prevented, or detected and corrected on a timely basis. A significant deficiency is a deficiency, or combination of deficiencies, in internal control that is less severe than a material weakness, yet important enough to merit attention by those charged with governance.

### *Registration Statements and Other Offering Documents*

Should the Company wish to include or incorporate by reference these consolidated financial statements and our audit report(s) thereon into a future filing under the Securities Act of 1933, or an exempt offering, prior to our consenting to include or incorporate by reference our report(s) on such consolidated financial statements, we would consider our consent to the inclusion of our report and the terms thereof at that time. We will be required to perform procedures as required by the standards of the Public Company Accounting Oversight Board, including, but not limited to, reading other information incorporated by reference in the registration statement or other offering document and performing subsequent event procedures. Our reading of the other information included or incorporated by reference in the offering document will consider whether such information, or the manner of its presentation, is materially inconsistent with information, or the manner of its presentation, appearing in the financial statements. However, we will not perform procedures to corroborate such other information (including forward-looking statements). The specific terms of our future services with respect to future filings or other offering documents will be determined at the time the services are to be performed.

### *Our Responsibility to Communicate with the Board of Directors*

While the objective of our audit of the consolidated financial statements is not to report on the Company's internal control and we are not obligated to search for significant deficiencies or material weaknesses as part of our audit of the consolidated financial statements, we will communicate, in writing, significant deficiencies or material weaknesses to the Board to the extent they come to our attention.

We will report to the Board, in writing, the following matters:

- Corrected misstatements arising from the audit that could, in our judgment, either individually or in aggregate, have a significant effect on the Company's financial reporting process. In this context, corrected misstatements are proposed corrections of the financial statements that were recorded by management and, in our judgment, may not have been detected except through the auditing procedures performed.

- Uncorrected misstatements aggregated during the current engagement and pertaining to the latest period presented that were determined by management to be immaterial, both individually and in aggregate.

- Any disagreements with management or other significant difficulties encountered in performance of our audit.



- Other matters required to be communicated by auditing standards generally accepted in the United States of America.

We will also read minutes, if any, of the Board meetings for consistency with our understanding of the communications made to the Board and determine that the Board has received copies of all material written communications between ourselves and management. We will also determine that the Board has been informed of i) the initial selection of, or the reasons for any change in, significant accounting policies or their application during the period under audit, ii) the methods used by management to account for significant unusual transactions, and iii) the effect of significant accounting policies in controversial or emerging areas for which there is a lack of authoritative guidance or consensus.

To the extent that they come to our attention, we will inform the appropriate level of management about any illegal acts, unless they are clearly inconsequential, material errors in the financial statements and any instances of fraud. Further, to the extent they come to our attention, we will also communicate to the Board illegal acts that come to our attention, unless they are clearly inconsequential, material errors in the financial statements and any instances of fraud that involve senior management or that, in our judgment, cause a material misstatement of the financial statements.

If, during the performance of our audit procedures, circumstances arise which make it necessary to modify our report or withdraw from the engagement, we will communicate to the Board our reasons for withdrawal.

## Management Responsibilities

The management of the Company is responsible for the fair presentation, in accordance with U.S. generally accepted accounting principles, of the consolidated financial statements and all representations contained therein. Management also is responsible for identifying and ensuring that the Company complies with laws and regulations applicable to its activities, and for informing us of any known material violations of such laws and regulations. Management also is responsible for preventing and detecting fraud, including the design and implementation of programs and controls to prevent and detect fraud, for adopting sound accounting policies, and for establishing and maintaining effective internal controls and procedures for financial reporting to maintain the reliability of the consolidated financial statements and to provide reasonable assurance against the possibility of misstatements that are material to the consolidated financial statements. Management is also responsible for informing us, of which it has knowledge, of all significant deficiencies or material weaknesses in the design or operation of such controls. The audit of the consolidated financial statements does not relieve management or those charged with governance of their responsibilities.

Management of the Company also agrees that all records, documentation, and information we request in connection with our audit will be made available to us, that all material information will be disclosed to us, and that we will have the full cooperation of the Company's personnel. As required by the auditing standards generally accepted in the United States of America, we will make specific inquiries of management about the representations embodied in the consolidated financial statements and the effectiveness of internal control, and obtain a representation letter from management about these matters. The responses to our inquiries, the written representations, and the results of audit tests, among other things, comprise the evidential matter we will rely upon in forming an opinion on the consolidated financial statements.

Management is responsible for adjusting the consolidated financial statements to correct material misstatements and for affirming to us in the representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the consolidated financial statements being



reported upon taken as a whole. Because of the importance of management's representations to the effective performance of our services, the Company will release KPMG LLP (KPMG) and its personnel from any claims, liabilities, costs, and expenses relating to our services under this letter attributable to any known misrepresentations in the representation letter referred to above.

**Dispute Resolution**

Any dispute or claim arising out of or relating to this Engagement Letter or the services provided hereunder, or any other audit or attest services provided by or on behalf of KPMG or any of its subcontractors or agents to the Company or at its request, shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect ("CPR Arbitration Rules"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

Mediation, if selected, may take place at a location to be designated by the parties using Mediation Procedures of the International Institute for Conflict Prevention and Resolution, with the exception of paragraph 2 (Selecting the Mediator). Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction. Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

**Other Matters**

This letter shall serve as the Company's authorization for the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between KPMG and the Company and between KPMG and outside specialists or other entities engaged by either KPMG or the Company. The Company acknowledges that e-mail travels over the public Internet, which is not a secure means of communication and, thus, confidentiality of the transmitted information could be compromised through no fault of KPMG. KPMG will employ commercially reasonable efforts and take appropriate precautions to protect the privacy and confidentiality of transmitted information.

Further, for purposes of the services described in this letter only, the Company hereby grants to KPMG a limited, revocable, non-exclusive, non-transferable, paid up and royalty-free license, without right of sublicense, to use all names, logos, trademarks and service marks of the Company solely for presentations or reports to the Company or for internal KPMG presentations and intranet sites.



KPMG is a limited liability partnership comprising both certified public accountants and certain principals who are not licensed as certified public accountants. Such principals may participate in the engagements to provide the services described in this letter.

The work papers for this engagement are the property of KPMG. In the event KPMG is requested pursuant to subpoena or other legal process to produce its documents relating to this engagement for the Company in judicial or administrative proceedings to which KPMG is not a party, the Company shall reimburse KPMG at standard billing rates for its professional time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

KPMG member firms located outside the United States and other third-party service providers operating under our supervision may also participate in providing the services described in this letter.

The Company agrees to provide prompt notification if the Company or any of its subsidiaries or affiliates currently are or become subject to the laws of a foreign jurisdiction that require regulation of any securities issued by the Company or such subsidiary or affiliate that would result in KPMG becoming subject to registration in such jurisdiction.

### *Additional Reports and Fees for Services*

Appendix I to this letter lists the report we will issue as part of this engagement and our fees for professional services to be performed per this letter.

In addition, fees for any special audit-related projects, such as research and/or consultation on special business or financial issues, may be billed separately from the audit fees for professional services set forth in Appendix I and may be subject to written arrangements supplemental to those in this letter.

* * * * * * *



Our engagement herein is for the provision of annual audit services for the financial statements and for the periods described in Appendix I, and it is understood that such services are provided as a single engagement. Pursuant to our arrangement as reflected in this letter, we will provide the services set forth in Appendix I as a single engagement for each of the Company's subsequent fiscal years until either the Board or we terminate this agreement, or mutually agree to the modification of its terms. The fees for each subsequent year will be annually subject to negotiation and approval by the management of the Company.

Our retention is subject to Court approval. In the event we become aware of a conflict of interest relating to any of our services to you, we will advise you and the other parties and, with the concurrence of all affected parties, take reasonable steps to provide appropriate separation between service teams. Please note that in certain circumstances, we may be precluded from assisting you on a particular project due to the nature of the conflict.

We shall be pleased to discuss this letter with you at any time. For your convenience in confirming these arrangements, we enclose a copy of this letter. Please sign and return it to us.

Very truly yours,

KPMG LLP

Benjamin B. Reinhardt
*Partner*


ACCEPTED:

**Schwing America, Inc.**

Brian Mogensen

CFO

Title

3/31/10

Date



Appendix I

## Fees for Services

Based upon our discussions with and representations of management, our fees for services we will perform are estimated as follows:

| | |
|---|---|
| Audit of the consolidated balance sheets of Schwing America, Inc and subsidiaries as of December 31, 2009 and 2008, the related consolidated statements of operations, statements of shareholder's equity and comprehensive loss, and statements of cash flows for the years then ended.* | $165,000 to $185,000 |
| Audit procedures related to the financial statements of Schwing Bioset, Inc. which are required to be consolidated. | $10,000 to $15,000 |
| Involvement of KPMG specialists in connection with accounting issues as they arise. | To be determined** |

\* We estimate that based upon the level of experience of the individuals who will perform the services, this engagement will require approximately 1,100 hours in which to complete all necessary audit procedures, which includes 45 hours of tax specialists (we spent approximately 2,200 total hours on the fiscal 2008 audit). Expenses for items such as travel, telephone, postage, typing, printing, reproduction are billed for reimbursement as incurred. Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

\*\* Billings for these services will be based upon time incurred by KPMG Minneapolis or KPMG specialists as necessary. Billing rates for these services will be at 40% of KPMG standard rates.

Our fees and expenses will be billed every two weeks as charges are incurred. The ethics of our profession prohibit the rendering of professional services where the fee for such services is contingent, or has the appearance of being contingent, upon the results of such services. Accordingly, in order to avoid the possible implication that our fee is contingent upon the success of the contemplated offering, it is important that our bills be paid promptly when rendered. If a situation arises in which it may appear that our independence would be questioned because of significant unpaid bills, we may be prohibited from signing our audit report and consent.

Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to the client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges which may be charged to clients.



**KPMG LLP**
4200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

Telephone    612 305 5000
Fax          612 305 5100
Internet      www.us.kpmg.com

March 30, 2010

**PRIVATE**

Mr. Brian Mogensen
Schwing America, Inc.
5900 Centerville Road
White Bear Township  MN  55127

Dear Brian:

We are pleased you have engaged KPMG LLP (KPMG) to provide tax compliance and tax consulting services for Schwing America, Inc. and Subsidiaries (Schwing). This letter confirms the scope and related terms of your engagement of KPMG.

## I.     Tax Compliance Services

We will perform the following services:

1)      We will prepare federal and state corporate tax returns and supporting schedules for Schwing's 2009 tax year. Our records indicate that we should prepare the following returns:

| | |
|---|---|
| **Form 1120:** | **U.S. Corporation Tax Return** |
| **Form 100:** | **California Corporation Franchise Tax Return** |
| **Form CT-1120:** | **Connecticut Corporation Business Tax Return** |
| **Form F-1120:** | **Florida Corporate Income & Emergency Excise Tax Return** |
| **Form 600:** | **Georgia Corporation Tax Return** |
| **Form 4567:** | **Michigan Business Tax Annual Return** |
| **Form M4:** | **Minnesota Corporation Franchise Tax Return** |
| **Form CBT-100:** | **New Jersey Corporation Business Tax Return** |
| **Form RCT-101:** | **Pennsylvania Franchise Tax Report** |
| **Form 05-102:** | **Texas Public Information Report** |
| **Form 05-158:** | **Texas Franchise Tax Report** |

The preparation of the federal return includes preparation of the appropriate Forms 5471 and 5472.

KPMG LLP, a U.S. limited liability partnership, is the U.S.
member firm of KPMG International, a Swiss cooperative.





2)     We will determine the Company's quarterly estimated tax payments for the 2010 tax year.

3)     We will prepare Form 1139 to carry back the Company's 2009 net operating loss as allowed under tax law to procure refunds of prior taxes paid.

4)     We will also prepare Forms 5500 and related Schedules and Summary Annual Reports for Schwing's 2008 tax year for the listed Plans unless you notify us to the contrary. Our records indicate that we should prepare Forms 5500 for the following plans:

**Plan #501 – 401(k) Plan (extension only, if necessary)**

**Plan #502 – Flexible Benefit Plan (if required)**

**Plan #503 – Insured Welfare Plan**

**Plan #504 – Accidental Death & Dismemberment Plan**

**Plan #505 – Weekly Indemnity Plan**

**Plan #510 – Employee Assistance Plan**

Under this engagement, KPMG will not perform plan audits or prepare Schedule B's Actuarial Information for the Plans. KPMG will receive and incorporate such information as part of the Form 5500 preparation process. Schwing will be responsible for having such information submitted to KPMG in a timely fashion.

This engagement letter is also intended to apply to preliminary engagement planning activities related to the tax returns specified above for the immediately succeeding tax year.

We will provide you with a list of the information we will require in order to prepare the returns. If we do not receive all of the requested information by March 1, 2010, and you have returned to us a signed copy of this letter, we will automatically prepare, for your filing, a request for extension of time to file the applicable returns.

We will prepare these returns from the information you submit. We will not audit or independently verify the data you submit. However, we may ask for clarification of some of the information. Our engagement cannot be relied on to uncover errors, omissions, or irregularities, should any exist in the underlying information incorporated in the tax returns. However, we will inform you of any such matters that come to our attention. Because management has ultimate responsibility for the tax returns, please have the appropriate corporate officials review the returns before an officer signs and files the returns.

Please note that if Schwing had a taxable presence (e.g., an employee within the jurisdiction or any tangible property owned or rented within the jurisdiction) in a jurisdiction not listed above, it may be subject to income or franchise tax in that jurisdiction, depending upon the particular


facts. It is Schwing's obligation to notify KPMG if assistance is needed to determine whether Schwing is liable for income or franchise tax or has a filing requirement in any jurisdiction not listed above.

All returns are subject to examination by the taxing authorities. In the event of an examination, Schwing may be requested to produce documents, records, or other evidence to substantiate the items of income and deduction shown on the tax returns. In preparing your returns, we rely on your representations that you understand and have complied with applicable documentation requirements for Schwing's income, expenses, deductions, and credits. If an examination occurs, and if you and we agree to have KPMG assist or represent Schwing in the examination, any such additional services and the fee therefore would be set forth in a separate engagement letter.

**Tax Return Standards**

KPMG applies elevated standards in preparing tax returns. Under these standards, we must be able to determine that a return position is at least "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the taxing authorities). If a return position relates to a transaction that is a "principal purpose transaction" or a transaction that the IRS or a state tax authority has identified as a "listed transaction," we must arrive at a "should" confidence level (i.e., approximately a 70 percent or greater likelihood of success if challenged by the taxing authorities) with respect to the position. In determining whether a return position meets the appropriate standard, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our preparation, we determine circumstances exist that prevent us from completing the tax return under these standards. We will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

**Electronic Filing**

KPMG will electronically file the returns we prepare for you that are subject to tax authority mandates. The filing instructions that KPMG provides to you will indicate the returns that KPMG has electronically filed on your behalf, if any, and will provide instructions and filing copies for your paper filing of the returns that were not electronically filed.

**II.     Tax Consulting Services**

This engagement letter also covers tax consulting matters that may arise for which you seek our advice, both written and oral, and that are not the subject of a separate engagement letter. We will apply the elevated standards described in the "Tax Return Standards" section of this letter with respect to any such advice which would cause KPMG to be considered a tax return preparer under Treasury Regulation §301.7701-15. KPMG will not render any advice with


respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

The general tax consulting services included in this tax compliance engagement letter pertain to: (1) routine tax advice concerning the federal, state, local, and foreign tax matters related to the preparation of the prior year's federal, state, local, and foreign tax returns; (2) routine tax advice concerning the federal, state, local, and foreign tax matters related to the computation of the client's taxable income for the current year or future years; and (3) routine dealings with a federal, state, local, or foreign tax authority (e.g., responding to automated interest and penalty notices, preparing tax computations based upon the taxpayer's concession or settlement of an issue with the relevant tax authority).

If matters exceed the scope of this engagement letter, we will issue a separate engagement letter or clarifying addendum to confirm the scope and related terms. Furthermore, a separate engagement letter will be issued for each discrete tax consulting project not specified in this engagement letter (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation.

When, in the course of providing general tax consulting services, it is determined that the service would exceed the scope of this letter, preliminary engagement planning activities undertaken prior to the issuance of a separate engagement letter for the discrete tax consulting project are intended to be covered by this engagement letter.

To be of greatest assistance to Schwing, we should be advised **in advance** of proposed transactions.

We do not anticipate that the written tax advice provided under this engagement letter will be a Covered Opinion as defined in §10.35 of Circular 230 (Covered Opinion). Therefore, all the written tax advice provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR
> WRITTEN BY KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR
> ANY OTHER PERSON OR ENTITY FOR THE PURPOSE OF (i) AVOIDING
> PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER OR (ii)
> PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY
> MATTERS ADDRESSED HEREIN.

However, if our services will rise to the level of a Covered Opinion, we will issue a separate engagement letter for the issuance of a Covered Opinion.

**Coordination with KPMG International Member Firms**

Our services covered by this engagement letter may also necessitate the assistance of a member firm of KPMG International. To the extent that our services under this engagement letter require



such assistance, the services will be provided under the direction of KPMG LLP, the U.S. member firm of KPMG International, and will include the participation of one or more other member firms of KPMG International (KPMG member firms). KPMG LLP is a separate legal entity from other member firms of KPMG International. Advice relative to tax matters outside the United States will be based on tax advice provided by the KPMG member firm in the particular country and on the relevant tax authorities in that country. In rendering such advice, we may also consider U.S. tax treaties, their technical explanations, and judicial and administrative interpretations thereof.

**Fees**

I.    Tax Compliance Services

Our fee for tax compliance services detailed in 1) above, including all required extensions, will be the lesser of:

- actual time incurred to complete the work at 60% of our standard hourly rates for the individuals involved in providing the services; or

- $38,500.

Our fee for tax compliance services detailed in 2) above will be based on the actual time incurred to complete the work at our standard hourly rates for the individuals involved in providing the services.

Our fee for tax compliance services detailed in 3) above will be the lesser of:

- actual time incurred to complete the work at 60% of our standard hourly rates for the individuals involved in providing the services; or

- $3,750.

Our fee for tax compliance services detailed in 4) above, including all required extensions, will be the lesser of:

- actual time incurred to complete the work at our standard hourly rates for the individuals involved in providing the services; or

- $4,500.

We will endeavor to notify you if we encounter any circumstances that warrant additional time or expense. If such matters exceed the scope of this engagement letter, we will issue an addendum or separate engagement letters to confirm the scope and related terms of any additional engagements.



Our fees for tax compliance services in 1) and 2) above will be progress billed as follows:

| Progress bill to be mailed on | Amount to be billed |
|---|---|
| April 15, 2010 | $12,000 |
| May 15, 2010 | $12,000 |
| July 15, 2010 | $12,000 |
| Upon completion of returns | Balance due, if any |

Our fees for tax compliance services in 3) and 4) above will be billed upon completion of returns.

II.      Tax Consulting Services

Our fees for any tax consulting services under this engagement will be based on the actual time incurred to complete the work at our standard hourly rates for the individuals involved in providing the services.

Our fees for tax consulting services will be billed as incurred.

Member firm fees will be agreed upon, in writing, prior to a member firm providing any services under this engagement letter. We will notify you of this arrangement.

**Consent to Disclose and Use Tax Return Information**

Federal law prohibits our disclosing, without your consent, your tax return information to third parties (such as one or more KPMG International Member Firms or to KPMG LLP's India-based returns processing center, the "Q-Center") or our use of that information for purposes other than the preparation of your return. In executing this engagement letter, you authorize KPMG LLP to disclose your tax return information to the Q-Center or such other third party service providers as you may request or as may be required for purposes of completing the services under this engagement letter (including, but not limited to, the processing of your return). Your consent will be valid until such time as we have completed the services described in, and any services that are ancillary to, those described in this engagement letter.

*        *        *

The attached Standard Terms and Conditions for Advisory and Tax Services are made a part of this engagement letter. Please sign the enclosed copy of this letter to confirm our agreement and return it to us as soon as possible so that we may begin work on this engagement.

Our retention is subject to Court approval. In the event we become aware of a conflict of interest relating to any of our services to you, we will advise you and the other parties and, with



the concurrence of all affected parties, take reasonable steps to provide appropriate separation between service teams. Please note that in certain circumstances, we may be precluded from assisting you on a particular project due to the nature of the conflict.

Unless otherwise terminated, modified, or superseded in writing, this engagement letter is intended to apply for a period of 15 months from the date of signing by the client. In addition, effective as of the date of signing, this engagement letter supersedes any and all previously issued engagement letters pertaining to the services described above.

If you have any questions, please call me.

Very truly yours,

KPMG LLP

Steven A. Olson
*Tax Managing Director*

Enclosures:    Standard Terms and Conditions for Advisory and Tax Services

## ACCEPTED:

Schwing America, Inc.

_____
Authorized Signature

_____
Print Name, Title

_____
Date

cc:    Benjamin B. Reinhardt, KPMG LLP
       Saida A. Lesov, KPMG LLP

# KPMG LLP

 **Standard Terms and Conditions for Advisory and Tax Services**

1. **Services; Client Responsibilities.**

(a) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client. References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached (the "Engagement Letter").

(b) In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

(c) Subsequent to the completion of this engagement, KPMG will not update its advice, recommendations or work product for changes or modification to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination.

4. **Ownership and Use of Deliverables.**

(a) KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, use, provide, modify, create, acquire or otherwise obtain rights in, concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software (collectively, the "KPMG Property"). KPMG retains all ownership and use rights in the KPMG Property. Client shall acquire no rights or interest in the KPMG Property, except as expressly provided in the next paragraph. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

(b) Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables.

(c) Client acknowledges and agrees that any advice, recommendations, information or work product provided to Client by KPMG in connection with this engagement is for the sole use of Client and may not be relied upon by any third party. Client agrees that if it makes such advice, recommendations, information or work product available to any third party other than as expressly permitted by the Engagement Letter the provisions of Paragraph 8(b) shall apply unless Client provides the written notice to the third party in substantially the form of Appendix A hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 17(a) below, no acknowledgement of the Notice shall be required and (ii) no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the Engagement Letter.

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with American Institute of Certified Public Accountants ("AICPA") and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages.** Except for each party's indemnification obligations herein, neither Client nor KPMG shall be liable to the other for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter for an aggregate amount in excess of the fees paid or owing to KPMG under the Engagement Letter. In no event shall either party be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

7. **Infringement.**

(a) KPMG hereby agrees to indemnify, hold harmless and defend Client from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against Client to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued as of the

Revised 9/10/06


date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification shall not apply to any infringement arising out of (x) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than in accordance with Paragraph 4(c); (y) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (z) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of options described in (i) or (ii) above, Client shall return the Deliverable to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification.**

(a) Each party agrees to indemnify, hold harmless and defend the other from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which the other party may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the indemnifying party.

(b) In accordance with Paragraph 4(c) Client agrees to indemnify, defend and hold harmless KPMG from and against any and all Liabilities incurred or suffered by or asserted against KPMG in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon KPMG's advice, recommendations, information or work product as a result of Client's disclosure of such advice, recommendations, information or work product without adhering to the notice requirements of Paragraph 4(c) above.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages.

9. **Cooperation; Use of Information.**

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, equipment, data and information to the extent necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional obligations of Client in connection with this engagement. Client acknowledges that Client's failure to perform these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(b) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material effect on KPMG's conclusions.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (i) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (ii) is or becomes publicly known through no wrongful act of the Receiving Party; (iii) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (iv) relates to the tax treatment or tax structure of any transaction, (v) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 or 6112 of the Internal Revenue Code ("IRC") or the regulations thereunder or under any similar or analogous provisions of the laws of a state or other jurisdiction or (vi) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

Revised 9/10/06

(b) The Receiving Party will deliver to the Disclosing Party all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for one copy thereof that the Receiving Party may retain for its records. The Receiving Party shall not use or disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided, however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required to be disclosed pursuant to a statutory or regulatory provision or court order or to fulfill professional obligations and standards.

(c) Each party shall be deemed to have met its nondisclosure obligations under this Paragraph 11 as long as it exercises the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(d) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent permitted by law, subject to any protective order or the like that may have been entered in the matter.

12. **Assignment; Use of Member Firms.** Neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld. Notwithstanding the foregoing, to the extent any of the services under the Engagement Letter will be performed in or relate to a jurisdiction outside of the United States, Client acknowledges and agrees that such services, including any applicable tax advice, may be performed by the member firm of KPMG International practicing in such jurisdiction. Accordingly, Client consents to KPMG's disclosure to a member firm and such member firm's use of data and information, including tax return information, received from or at the request or direction of Client for the purpose of completing the services under the Engagement Letter.

13. **Governing Law; Severability.** The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

(a) Any dispute or claim arising out of or relating to the Engagement Letter between the parties or the services provided thereunder shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for

arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution ("CPR Arbitration Rules"). By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the International Institute for Conflict Prevention and Resolution, with the exception of paragraph 2 (Selecting the Mediator).

(c) Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in CPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

15. **Miscellaneous.**

(a) Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) KPMG may communicate with Client by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Client accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices) and agrees that it may rely only upon a final hardcopy version of a document or other communication that KPMG transmits to Client unless no such hard copy is transmitted by KPMG to Client.

Revised 9/10/06


(c) For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) Except as permitted by law or the terms of the Engagement Letter, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

16. **Entire Agreement.** The Engagement Letter and these Standard Terms and Conditions, including the Exhibits and Appendices hereto and thereto, constitute the entire agreement between KPMG and Client with respect to the services under the Engagement Letter and supersede all other oral and written representation, understandings or agreements relating thereto.

17. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG advice is requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a

material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and. IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c) Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that KPMG will not assert on Client's behalf any claim of privilege unless Client specifically instructs KPMG in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will KPMG assert any claim of privilege that KPMG concludes, after exercising reasonable judgment, is not valid.

(d) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

(e) Client acknowledges that in connection with any tax compliance services provided by KPMG under the Engagement Letter, KPMG may utilize the services of affiliates and third party service providers within and without the United States to organize and input data, operate the software used to generate tax returns for Client or its personnel and perform other related tasks. Client hereby consents to KPMG's use of such affiliates and third party service providers and the disclosure to such affiliates and third party service providers and their use of tax return information, received from Client or its personnel for the purpose of preparing, assisting in preparing, or obtaining or providing services in connection with preparing, any tax return required under the Engagement Letter.

(f) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and the Employee Retirement Income Security Act of 1973, each as amended, and the relevant state and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.



**APPENDIX A**

**[FORM OF NOTICE AND ACKNOWLEDGEMENT]**

[Name of Third Party]
Address

The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and may not be relied upon by you or any other person or organization. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

*Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.

Very truly yours,

[Name of Client]

By: _____
    Name:
    Title:

**\*Accepted and Agreed to on this ___ day of ____, 20__ by:**

[Name of Third Party

By: _____
    Name:
    Title:

\* Remove if a signed acknowledgement is not required by the terms of Paragraph 4(c).

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

SCHWING AMERICA, INC.

Bky 09-36760
Chapter 11

Debtor.

**UNSWORN DECLARATION OF BENJAMIN B. REINHARDT**

I, Benjamin B. Reinhardt, declare under penalty of perjury that:

1.    I am a partner in the firm of KPMG LLP ("KPMG"), located at 4200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402.

2.    To the best of my knowledge and based upon the results of the relationship search described below and disclosed herein, KPMG neither holds nor represents an interest adverse to the Debtor's estate that would impair KPMG's ability to objectively perform professional services for the Debtor, in accordance with section 327 of the Bankruptcy Code..

3.    To the best of my knowledge (a) KPMG has no connections with the secured creditors of the Debtor or unsecured creditors holding nonpriority claims over $20,000 except as disclosed on Schedule A attached; and (b) the KPMG partners and professionals working on this matter are not relatives of and have no known connection with the United States Trustee of the District of Minnesota or of any known employee in the office thereof, or any United States Bankruptcy Judge of the District of Minnesota,

4.    KPMG is the United States member firm of KPMG International, a Swiss cooperative of member firms, each a separate legal entity, located worldwide. Only KPMG is being retained in this matter. KPMG cannot assure that an engagement will not be accepted by a

foreign member firm of KPMG International for another party that may bear upon KPMG's engagement by the Debtors. However, to the extent KPMG is aware of such engagement and believes such engagement may bear upon KPMG's engagement by the Debtors, KPMG will file a supplemental declaration with the Bankruptcy Court. The member firm of KPMG International located in Germany ("KPMG Germany") has been engaged by Schwing GmbH, the direct or indirect parent of the Debtors, to help the parent company find new bank financing. KPMG does not believe that this relationship is adverse to this chapter 11 case.

5.      To the extent the Application is granted, KPMG has agreed to waive amounts owed for professional services rendered prior to the Petition Date.

6.      From time to time, KPMG may consult with certain professionals from member firms of KPMG International when necessary to the performance of its professional duties and services to the Debtor. The use of such professionals allows KPMG to maximize resources and minimize costs to the Debtor's estate.

Dated: April 5th, 2010

Benjamin B. Reinhardt

# SCHEDULE A
## KPMG Relationships

**CREDITORS HOLDING SECURED CLAIMS**
DE LAGE LANDEN FINANCIAL
WELLS FARGO BANK, N A
BANK OF AMERICA
WELLS FARGO EQUIPMENT FINANCE

**MAJOR CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS (>$20,000)**
ARAMARK REFRESHMENT SERVICES
BOSCH REXROTH ELCHINGEN
BRIGGS & MORGAN
CONCRETE PUMP REPAIR
CONTRANS LOGISTIK GmbH/WIRE
DEUTSCHE LEASING USA, INC.
DYNAMIC ENGINEERING
ESSER TWIN PIPES
FASTENAL COMPANY
FCC EQUIPMENT FNANCE INC
FREEMAN
HYPRO LLC
OMNEX CONTROL SYSTEMS ULC
PALL AEROPOWER CORPORATION
PARKER HANNIFIN CORP
POWER SYSTEMS
PRAETORIAN INSURANCE COMPANY
PRAXAIR DISTRIBUTION INC
RUHFUS SYSTEMHYDRAULIK Gmbh
RYERSON
SCHENKER INTERNATIONAL INC
SCHWING GmbH
SENTRY INSURANCE
SNR WALZLAGER GMBH
TCF EQUIPMENT FINANCE
VERTEX INC.
WELLS FARGO EQUIPMENT FINANCE
WELLS FARGO INSURANCE SERVICES
WURTH-ADAMS NUT & BOLT CO

April 5, 2010

<u>VIA E-MAIL</u>


Clerk of U.S. Bankruptcy Court
301 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415

**Re:    Schwing America, Inc.**
**       Bky Case No. 09-36760**

Dear Clerk:

Enclosed for filing are the following documents:

1.      Application for Approval of Employment of Auditors and Tax Consultants for Debtor;

2.      Unsworn Declaration of Benjamin B. Reinhardt; and

3.      Proposed Order Authorizing Employment of Auditors and Tax Consultants.

By copy of this letter, two copies of these documents have been provided to the Office of U.S. Trustee.

Very truly yours,

RAVICH MEYER KIRKMAN McGRATH
NAUMAN & TANSEY, P.A.

Michael L. Meyer

Enclosures
cc:     Sarah J. Wencil (w/enc.)

4545 IDS Center 80 South Eighth Street  Minneapolis, Minnesota 55402-2225  Telephone (612) 332-8511  Facsimile 332-8302
Fed. I.D. No. 41-1692850          www@ravichmeyer.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

SCHWING AMERICA, INC.                                  Bky Case No. 09-36760
                                                       Chapter 11

                          Debtor.

**ORDER AUTHORIZING EMPLOYMENT OF AUDITORS**
**AND TAX CONSULTANTS**

Upon the application of the Debtor in possession in the above-entitled case and it appearing necessary and appropriate that said Debtor has services provided by the firm of KPMG LLP in the above-entitled case,

IT IS ORDERED:

1.      The employment of the firm of KPMG LLP, 4200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, as auditors and tax consultants for the Debtor in possession in all matters pertaining to the purposes set for in the Application for Approval of Employment of Auditors and Tax Consultants, is approved.

2.      The fee applications by KPMG LLP may be heard on 90-day intervals from commencement of the case.

3.      The Debtor is authorized to pay monthly invoices of KPMG LLP under the procedures in Instruction 8(c) of this Court's published Instructions for Filing a Chapter 11 Case.

Dated:

                        _____
                        NANCY C. DREHER
                        UNITED STATES BANKRUPTCY COURT